WALTER W. GOFF, *Assignee vs.* UNITED STATES FIDELITY AND GUARANTY COMPANY *et al.*

MARCH 14, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This is a bill in equity for an accounting. The complainant is the assignee of a building contractor under the latter's general assignment for the benefit of creditors. The respondents are the owner of the building, which the contractor was to construct according to a contract, and the surety on the contractor's bond. The surety, by virtue of

the contractor's agreement to indemnify it against loss arising out of its obligations under the bond, was also an assignee of all the rights, moneys and property of the contractor that were due under, or related to, the building contract. After a hearing in the superior court on bill, answers, replication and proof, a decree was entered denying and dismissing the bill as against the owner but ordering an account to be filed within thirty days by the surety. From this decree the complainant took no appeal, and the cause is before this court on the single appeal of the respondent surety company.

From the bill of complaint and the evidence the following facts appear. Omer Lavigne and Simeon Lavigne, copartners doing business as O. & S. Lavigne Co., called the contractor, entered into an agreement, dated September 12, 1930, with Saint Vincent de Paul Infant Asylum, a Rhode Island corporation, herein called the owner. The contractor thereby agreed to furnish all materials and labor and to build, in accordance with the specifications and provisions of the contract, a three story and basement brick addition to certain premises of the owner. The contract contained many provisions, which we need not state in full, and called for payment by the owner to the contractor of a total sum of $122,900. Provision was made for payments to the contractor, as the work progressed, in accordance with certain specifications which were in the contract and which included certification by the architect, and also the owner's right to retain, until the completion of the contract and for the purpose of indemnifying it against claims and loss, 15% of all amounts due from time to time under the contract.

On the same date, September 12, 1930, the contractor as principal and the respondent surety company as surety executed and delivered to the owner a common-law form of indemnity bond which is conditioned upon the full performance of the contract in accordance with its terms and provisions. Such bond was in the penal sum of $61,450 and, immediately following the condition therein, contained the

provision: "It is, however, mutually understood between the parties hereto, That in no event shall the Surety be liable for a greater sum than the penalty of this bond, or subject to any suit, action or other proceeding thereon that is instituted later than the first day of July, A. D. 1932."

Apparently on the same date, to indemnify the surety against loss arising out of its obligations under the bond, the contractor in writing assigned to the surety all the tools, equipment and materials on the job, or otherwise chargeable to said contract; all rights in and to all subcontracts; and all rights, properties and moneys, including deferred payments and retained percentages, then due or to become due to the contractor under the contract, such assignment to become effective upon any default by the contractor under the building contract. While this assignment to the surety purported to be absolute, it also expressly provided that the assigned rights, properties and moneys therein mentioned were "to be by it credited upon any loss, damage, charge and expense sustained or incurred by it as above set forth under its bond of suretyship."

On June 1, 1931, after the work had progressed to a degree not made clear in the evidence, the contractor became insolvent and made to the complainant Walter W. Goff a general assignment for the benefit of creditors. Notice of the contractor's inability to carry out the contract was given to the owner and upon the complainant's acknowledgment of the default thereunder and his abandonment thereof, completion of the work in accordance with the contract was taken over by the surety. Thereafter, by letter of July 7, 1931, the complainant formally notified the surety that he was holding the owner liable for the amounts of money due for work and labor performed and for materials furnished on the job by certain subcontractors and materialmen prior to the contractor's default and for which complainant held releases of their claims.

On July 11, 1931, the complainant reaffirmed this notice and claim. By letter of that date to the surety he set forth

the particular materialmen and subcontractors and the specific amounts due each for which the complainant stated that he held corresponding releases in the total amount of $16,654.47 and that he claimed the owner was liable for these sums to him as he was the assignee of the contractor for the benefit of the latter's creditors. Later, on November 20, 1931, the complainant agreed that the surety might pay certain other claims of materialmen and subcontractors totaling $29,430.34, because they represented claims for material and labor furnished subsequently to the contractor's default, or claims for which liens had not been released or waived.

The contract was completed by the surety, in accordance with the contract and bond, prior to July 1, 1932. The complainant admitted that he knew that the contract was completed but he testified that he did not know the exact date of its completion; and that he received no information from the owner or surety as to payments made by or to them in the course of completing the contract, or in finally adjusting certain controverted claims. He testified that he left a meeting in 1937, at which the surety was represented, under the belief that it was agreed that such information would be given to him when final adjustment was made by the surety with the owner; and that he had made no further inquiry for that reason. He testified that such information did not come to him until after the present bill in equity was brought in October, 1945 and that he did not have a specific knowledge of what payments were made by the owner to the surety or what credits were given to the contractor by the surety against its claim of loss sustained in completing the contract.

The respondents filed separate, though substantially identical, answers in which they admitted the contract and bond and also that there was an agreement between the contractor and surety in connection with indemnifying the latter against loss as alleged; but they neither admitted nor denied, and left complainant to prove, other pertinent paragraphs of the bill which involved his claims to retained percentages as allegedly demanded. They also added, by the ninth paragraph,

an allegation that the complainant was guilty of laches in waiting from 1932 to 1945 before taking any action or proceeding at law or in equity, and prayed that the bill be dismissed.

Following the trial justice's decision a decree was entered: (1) Denying and dismissing the bill as against the respondent St. Vincent de Paul Infant Asylum; (2) denying the motion of the respondent surety company to dismiss the bill of complaint on the ground of laches as contained in the ninth paragraph of its answer; (3) denying the motion of the respondent surety company to dismiss the bill of complaint on the ground of the provision in the bond to the effect that suits, actions, or other proceedings therein must be instituted before the first day of July, 1932; and (4) ordering the surety company to file within thirty days an account of its acts and doings pursuant to the assignment of the contractor under the agreement to indemnify the surety against loss.

The respondent surety contends substantially: (1) That this is a suit or proceeding on the bond and that the terms thereof precluded any such suit or proceeding after July 1, 1932; (2) that the complainant assignee is in no better position than the contractor assignor and that they had an adequate remedy at law upon which the statute of limitations had run and that equity follows the law; (3) that the complainant, because of the contractor's breach and abandonment of the contract, had no rights under the contract or bond; and (4) that the complainant was guilty of laches in failing to take any action at law or in equity from the completion of the contract, before July 1, 1932, until October 15, 1945.

If this bill were to be considered as a suit or proceeding solely on the bond, as the respondent surety claims, there might be some force to its first contention. The bond is in the usual common-law form of performance bond and expressly includes a provision that no suits, actions or proceedings thereon shall be instituted after July 1, 1932. However

the complainant urges that the bill of complaint is based primarily on the contractor's assignment to the surety under the agreement to indemnify it against loss in the event that it was required to complete the contract. From the transcript it appears to have been so considered by the trial justice.

While such agreement was made at the time of, and in connection with, the execution by the surety of the bond, it is reasonable to consider it as an agreement differing from the bond and as one dealing more particularly with the effect of the assignment and the agreement to indemnify the surety against loss, which agreement was to be considered under the law of indemnity as between the principal and surety. Viewing the bill as primarily based upon such indemnity agreement, and only incidentally involving the bond itself, it was proper for the trial justice, at least so far as the ordering of an account by the respondent surety was concerned, to deny the motion to dismiss on the ground, as set forth in its first contention, that the terms of the bond precluded any suit or proceeding after July 1, 1932. The reason is that there is no such limitation in the indemnity agreement between the principal and surety.

But the respondent surety secondly argues that the complainant had adequate remedies at law by actions in account or otherwise against the owner or surety; that the statute of limitations ordinarily applicable to claims of this kind had run so as to bar the claims for items involved in the total of $16,654.47, which the complainant formally demanded in 1931; and that equity should follow the law. From this it appears to contend that the complainant is not now entitled to any accounting at all under this bill. In our judgment this conclusion does not follow. Assuming that the complainant may have had an adequate remedy at law as to these specific claims, which were admittedly known to him without the necessity of obtaining any accounting, the running of the ordinary statute of limitations as to such claims would not necessarily bar the whole proceeding for an accounting. unless there were no other basis or claim in the bill which

would affect the amount of loss, if any, to the surety upon its completing the contract.

Upon the evidence as it appears in the transcript, we cannot say that the complainant relies solely upon the above-mentioned specific items, although they appear to have been stressed greatly; nor can we say, supposing the complainant's claim to such items may not be well founded, that he is not entitled to be informed as to other possible items and as to whether the work was completed by the surety at a loss within the coverage of the indemnity agreement. In order to conclude whether the surety had a right to appropriate all the contractor's assets referred to in the indemnity agreement, complainant would have to learn whether there was any loss to the surety in completing the contract and, if so, how that loss was figured.

The surety thirdly contends that the contractor having defaulted and abandoned his contract was barred by the terms thereof from having any further rights to an accounting and that the complainant assignee stands in no better position. This might be a strong contention if the bill were based solely upon the building contract, which was breached and abandoned. However, as stated previously, the bill was based primarily upon the indemnity agreement which became effective *only* upon the breach of the original contract. We are of the opinion that this contention by the surety is answered by the express and operative terms of the indemnity agreement upon which the bill is primarily based.

Finally the respondent argues that the bill should be dismissed because the complainant was guilty of laches. The respondent has put in evidence only the contract and bond; and it has offered testimony merely as to the terms of the bond, especially the provision previously quoted and which appears to limit suits on the bond to those brought before July 1, 1932. We do not find any evidence to contradict complainant's testimony, weak and sketchy though it is, regarding his explanation of the long delay in bringing this proceeding; nor do we find any definite date when the com-

plainant was allegedly informed or had knowledge of the surety company's loss, so as to bring the complainant reasonably under a duty to take earlier proceedings for an accounting based on the indemnity agreement.

It does not appear in evidence that the respondent surety, because of the delay, had suffered any disadvantage, or had changed its position, or that it cannot reasonably make up an account which will fulfill its duty under this decree in accordance with the terms of the indemnity agreement. As the record stands, the surety depends merely on the lapse of time without any evidence to refute an inference from the complainant's testimony to the effect that he was led to believe, at the meeting in 1937, that the necessary information would be given to him when a certain controversy between the surety and the owner had been finally adjusted.

Ordinarily mere lapse of time is not enough to support a claim of laches. It has been held by this court that in legal significance laches is not mere delay but delay that works a disadvantage or prejudice to another. *Chase* v. *Chase*, 20 R. I. 202; *Oldham* v. *Oldham*, 58 R. I. 268, 284. It also has been held that any excuse for delay, which excuse takes hold of the conscience of the chancellor and makes it inequitable to interpose the bar of laches, is sufficient. *Hudson* v. *White*, 17 R. I. 519, 525.

In the circumstances that are undisputed in the evidence, and upon the theory that the bill is based primarily upon the indemnity agreement between the contractor and surety, we cannot say that the decree was wrong, so far as it ordered the respondent surety to file an account. When the account is filed, certain issues may then develop in connection with the complainant's specific claims, in the light of the statute of limitations ordinarily applicable to such kind of claims and of certain provisions of the building contract and the indemnity agreement.

These issues, as we understand the trial justice's decision, have been reserved for hearing on the complainant's exceptions to the account as and when filed, and were not passed

upon or determined by the decree before us. Therefore our approval of such decree is without prejudice to the rights of the parties to have the validity of complainant's particular claims considered and decided by the superior court, if and when such issues appear in connection with the account as filed.

The appeal of the respondent United States Fidelity and Guaranty Company is denied, the decree appealed from is affirmed as above set forth, and the cause is remanded to the superior court for further proceedings.

*Albert A. Baker, Baker & Spicer,* for complainant.

*Francis J. O'Brien,* for respondent U. S. Fidelity & Guaranty Company.